Shirley J. **VERTIGAN**, Plaintiff–Appellant,

v.

William A. **HALTER**, Acting Commissioner of Social Security, Defendant–Appellee.

No. 99–35787.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 8, 2001

Filed Aug. 10, 2001

Martin Taller, Law Offices of Martin Taller, Anaheim, California, for the plaintiff-appellant.

Victoria Blais and Stephanie Mortz, Office of General Counsel, Social Security Administration, Seattle, Washington, for the defendant-appellee.

Before: LAY,* TROTT and BERZON, Circuit Judges.

LAY, Circuit Judge:

Shirley Vertigan appeals the district court's affirmance of a final decision of the Commissioner of Social Security ("Commissioner") denying her disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401–33. On appeal, Ms. Vertigan contends that there was no substantial evidence on the record as a whole to support the Administrative Law Judge's ("ALJ") conclusion that she had the residual functional capacity to perform her past relevant work. Ms.

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

Vertigan claims that the ALJ erred by dismissing her subjective testimony of pain, by concluding that she could perform her past relevant work, and by failing to call a medical expert to determine the onset date of her disability. We reverse and remand for an award of benefits.

## I.

The admitted complexity of this appeal focuses upon whether Ms. Vertigan was disabled and unable to perform substantial gainful activity during her period of insurability. It is undisputed that the date Ms. Vertigan was last insured under the Act was December 31, 1988. It is also conceded that she met the disability insured status on June 30, 1983, the date that she stated she was unable to work, and continued to meet it through December 31, 1988. Ms. Vertigan brought the present case in 1996,[1] at which time the ALJ concluded that Ms. Vertigan suffered from severe chronic back pain syndrome. However, the ALJ concluded that Ms. Vertigan did not have an impairment or combination of impairments listed in, or medically equivalent to one listed in Appendix 1, Subpart P, Regulation No. 4. The ALJ further concluded that Ms. Vertigan was not disabled because she could perform her past relevant work as a cashier and as a receptionist. The district court reviewed the ALJ's decision and concluded that there was substantial evidence to support the ALJ's decision, with the exception that Ms. Vertigan's past relevant work did not include work as a receptionist.

Ms. Vertigan was born on December 28, 1934, and was fifty-four years of age on December 31, 1988, the date that she was last insured for disability benefits. Ms. Vertigan had her initial back surgery in 1977. Prior to her surgery in 1977, she worked as a pharmacy clerk, then as a waitress for eight months during 1978–1979, subsequently as a pharmacy clerk for Leisure World until the middle of 1983, and finally as a receptionist for brief periods during 1986. Her work as a pharmacy clerk encompassed, at brief intervals, duties as a cashier. She has not worked since that time.

Since her original surgery in 1977, she has had five other surgeries, but only one occurred during her period of insurability. On October 17, 1985, she underwent an L5 laminectomy, L5–S1 foraminotomy and left L5–S1 fusion.[2] It is conceded by both

---

1. According to the ALJ's report:

   The claimant filed her first prior application for a period of disability and disability benefits on December 26, 1985, in which she alleged disability beginning June 30, 1983. The application was denied initially on February 27, 1986 and on reconsideration April 30, 1986 (exhibits 1–8). The initial denial on February 27, 1986, is more than four years before the current application on May 27, 1992, the specified time limit for reopening. The claimant filed a second application on April 6, 1988, in which she alleged disability beginning June 30, 1983. The claim was denied initially on July 7, 1988, with no further appeal (exhibits 9 and 11). The undated initial notice of denial sent to the claimant (exhibit 12) was essentially like those discussed in the case of Gonzale[z] v. Sullivan, 914 F.2d 1197

   (9th Cir.1990). The undersigned has concluded that the determination on the claim filed December 26, 1985, should be reopened pursuant to Acquiescence Ruling 92–7(9) and Gonzale[z] to provide a full evaluation of the claimant's medical history. Therefore, the period of consideration begins June 30, 1983, the alleged onset date on that application, and ends December 31, 1988, the date the claimant was last insured for disability.

   ALJ Report, January 18, 1996, page 2.

2. Subsequent to her date of insurability, she underwent four other surgical procedures: March 19, 1991: L4–5 fusion; October 25, 1991: anterior cervical decompression with fusion C4–5, 5–6 and 6–7 with anterior iliac crest; May 5, 1992: lumbar laminectomy; and May 21, 1993: anterior lumbar diskectomy with fusion L4–5 and L5–S1.

sides that the four surgeries subsequent to December 1988 were not relevant to the determination of her condition as of December 1988. We concur with that assessment with one caveat, that her subsequent surgery corroborates the continuing deterioration of her back since the time of her second surgery on October 17, 1985.

The record shows that Ms. Vertigan saw numerous orthopedic, neurological and psychiatric physicians since her second surgery in October of 1985. Space does not permit, nor does it provide much guidance to repeat all of the surgical notes on medical examinations involved during the period from 1983 through 1998. Suffice it to say that all of the medical reports focused upon Ms. Vertigan's back condition, with differing recommendations as to treatment. However, we highlight certain notes which we find persuasive and corroborative of Ms. Vertigan's claim of disability and the lack of her ability to perform substantial gainful activity.

One of those exams was done in August 1985 when Ms. Vertigan was seen by Dr. Arthur Bunzel on behalf of a workers' compensation carrier. Dr. Bunzel determined as early as August 16, 1985, that based upon his findings "[t]he subjective factors of permanent disability currently do not permit this patient to work as a pharmacy clerk." Earlier in that same year, on March 19, 1985, Dr. Arthur Liggett indicated that Ms. Vertigan was precluded from heavy lifting, repeated bending and stooping, and prolonged sitting and standing.

In 1985, Dr. Harry Marinow, another workers' compensation physician, examined Ms. Vertigan, and based on a CT scan, found that Ms. Vertigan was suffering from spinal stenosis. Following conflicting psychiatric reports, Ms. Vertigan was admitted to the hospital on October 17, 1985, where she underwent surgery by Dr. James Roe for an L5 laminectomy, left

L5–SI foraminotomy, and a left L5–SI fusion. She continued to see Dr. Roe, who was able to verify her ongoing complaints of low back pain with various neurological examinations. Epidural blocks were performed on August 7, 1987, and September 9, 1987, to no avail. As early as December 16, 1987, Dr. Fernando A. Ravessoud, who had recommended the epidural blocks, indicated that Ms. Vertigan may have to have another back surgery which would involve an L4–5 fusion.

On June 10, 1988, the workers' compensation physician, Dr. Marinow, made the following observations:

Patient is able to lift no more than five pounds without increased pain of the low back. Prolonged walking, standing, and sitting cause increased pain of the low back. Patient is able to remain walking or standing for no longer than five minutes. Patient is not able to remain seated for longer than 10 minutes.

His report continued that Ms. Vertigan complained of "constant slight low back pain with constant slight radiation of pain to the lower extremities down to the heel, greater on the left. This pain is increased to a moderate degree with bending, stooping, squatting, climbing ladders or stairs, very heavy lifting, prolonged walking, standing or sitting, twisting, turning.…"

Eleven days later, on June 21, 1988, Dr. Steven Graboff, a state agency consultative physician, stated that Ms. Vertigan had constant, moderate low back pain and loss of motion in the spine. He stated in his report: Ms. Vertigan "has disabilities that revolve around the low back.… She has no difficulty with prolonged sitting, but does have difficulty with prolonged standing, walking, climbing and repeated bending and stooping." Claimant argues in her brief that she never made any statements to Dr. Graboff stating that she could sit for prolonged periods. She cites to her testi-

mony where she repeats that for so many years she has not been able to sit and that her sitting tolerance was only ten minutes before she felt she would have to get up and stand.[3]

Ms. Vertigan's back problems continued to deteriorate after the date she was last insured. She received additional treatment and surgeries, which we will not explain in detail, but as we mentioned earlier these treatments confirm the seriousness of her condition.

## II.

■ We review the district court's order affirming the Commissioner's denial of benefits de novo. *Smolen v. Chater,* 80 F.3d 1273, 1279 (9th Cir.1996). We uphold the Commissioner's decision denying benefits if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. *Hoffman v. Heckler,* 785 F.2d 1423, 1425 (9th Cir.1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Our review of the record convinces us that there was not substantial evidence on the overall record to support the ALJ's decision denying Ms. Vertigan benefits.

## III.

### A. Credibility Findings by the ALJ

Ms. Vertigan first argues that the ALJ failed to adequately credit her complaints of pain as reflected in the documentary records, her testimony, and her husband's testimony. Although it is difficult to perceive the ALJ's reasoning for concluding that Ms. Vertigan's testimony of pain lacked credibility, it appears that he felt

Ms. Vertigan could carry on sufficient daily exertional activities to do light work.

■ It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity. 20 C.F.R. § 404.1545. However, absent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons. *Smolen,* 80 F.3d at 1283–84. "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Commissioner of the Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999). The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it. *See Smolen,* 80 F.3d at 1285.

In evaluating the credibility of claimant's testimony, the ALJ must consider the factors set out in Social Security Ruling ("SSR") 95–5p. The factors in SSR 95–5p include daily activities and the adjudicator's personal observations of the claimant. *See* Soc. Sec. Rul. 95–5p, 1995 WL 670415, at *1. With respect to daily activities, this court has held that if a claimant "is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan,* 169 F.3d at 600 (emphasis added).

■ Ms. Vertigan testified that she is able to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read.

---

**3.** Counsel cites to Social Security Ruling 83–10 which defines necessary sitting to perform sedentary work as "sitting should generally total approximately 6 hours of an 8–hour workday." Soc. Sec. Rul. 83–10, 1983 WL 31251, at *5.

She also took physical therapy for six months and exercised at home. The ALJ relied on this evidence to conclude that Ms. Vertigan's daily activities involved physical functions that were inconsistent with her claims of pain. Yet, these physical activities did not consume a *substantial part* of Ms. Vertigan's day. This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be "utterly incapacitated" in order to be disabled. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities *despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved. As such, we find only a scintilla of evidence in the record to support the ALJ's finding that she lacked credibility about her pain and physical limitations. As revealed by the medical reports, Ms. Vertigan's constant quest for medical treatment and pain relief refutes such a finding.

Dr. Marinow examined Ms. Vertigan on several occasions. On May 21, 1985, he noted that her subjective complaints appeared markedly out of proportion with his objective findings. The ALJ cited this as one of the bases for discrediting claimant's testimony. Yet, this same orthopedic surgeon found that she should avoid "activities involving very heavy lifting, repetitive forward bending, stooping, crouching, twisting, turning, pushing, pulling or climbing activities, in an effort to prevent exacerbations of low back pain and disability." He also explained that:

My opinion remains unchanged from the previous reports of June 6, 1984 and May 1, 1985. Again I have reviewed her job analysis of Pharmacy Clerk, and it is my recommendation that she avoid this type of employment, wherein the patient as a Pharmacy Clerk may be required to stoop and bend up to fifty times per day, or perform the chores of dusting, cleaning, stocking shelves at various heights from the floor, as well as stooping or bending to gain access to prescriptions at low levels of shelving. Twisting and turning activities, while stocking, cleaning shelves and waiting on customers was performed up to 100 times per day. This patient has indicated that these repetitive activities of twisting, turning or bending significantly aggravate her low back condition. On this basis it is my recommendation that she avoid this type of employment, as it is certain to produce significant exacerbations of low back discomfort with it's [sic] attendant disability.

On September 18, 1985, Dr. Marinow again wrote the compensation carrier: "My opinion remains unchanged from the report of May 21, 1985 *in which a permanent and stationary status had been indicated.*" (emphasis added). This finding was made just before her fusion on October 17, 1985.

As to the ALJ's findings that the testimony from Ms. Vertigan's husband was not credible, the reasoning given by the ALJ for discrediting the husband is hardly credible itself. The husband had stated that the plaintiff was unable to stand, walk, or sit for any length of time, but according to the ALJ, he later testified that they did a walking program together because of his heart condition. As we understand it, the ALJ found Ms. Vertigan's husband lacked credibility because of his conflicting testimony. We hold the

husband's evidence neither detracts from nor is necessary to support Ms. Vertigan's condition. In sum, we conclude that the ALJ erred by discrediting Ms. Vertigan's allegations of pain.

## B. Past Relevant Work

We turn now to the question of whether Ms. Vertigan could perform her past relevant work. The ALJ found that Ms. Vertigan could perform her past relevant work as a receptionist and cashier.[4] Oddly enough, the record shows that the vocational expert ("VE") found her past relevant work to be that of a pharmacy clerk or sales clerk, not as a receptionist or cashier. The district court addressed the issue of whether Ms. Vertigan's past relevant work included work as a receptionist and cashier. The district court concluded that the ALJ's decision that Ms. Vertigan had past relevant work as a receptionist was not supported by substantial evidence because she only did the work occasionally, and we agree. However, we disagree with the district court's finding that substantial evidence supported the ALJ's finding that Ms. Vertigan's past relevant work included work as a cashier. Ms. Vertigan asserts that under *Valencia v. Heckler*, 751 F.2d 1082, 1087 (9th Cir.1985), her duties as a cashier cannot be parsed out from her main job as a pharmacy clerk. Ms. Vertigan contends that at the hearing she made it clear that her duties as a cashier were a small part of her job as a pharmacy clerk. Under questioning from the ALJ, the VE testified there were no transferable skills from her past relevant work. As to her past relevant work, the VE stated, when considering Ms. Vertigan's testimony, she had never performed work solely as a cashier.

Work experience is considered relevant if it was done within the last fifteen years, lasted long enough for Ms. Vertigan to learn to do it, and was substantial gainful activity. *See* 20 C.F.R. § 404.1565(a). The burden is on the claimant to prove that she cannot perform past relevant work. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993).

We find no substantial evidence on the record as a whole to support the ALJ's finding that Ms. Vertigan's past relevant work included work as a cashier. The rulings make it clear that broad generic occupational classifications of a job such as "delivery job" or "packaging job" are insufficient to test whether a claimant can perform past relevant work. *See* Soc. Sec. Rul. 82–61, 1982 WL 31387, at *1. In addition, Social Security Ruling 82–61 states, in pertinent part: "Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." *Id.*

While there was some confusion as to whether Ms. Vertigan had worked as a cashier, based on vocational reports she filled out, the record shows that Ms. Vertigan's testimony made it clear that she had never exclusively worked as a cashier. Further, the VE testified that Ms. Vertigan had past relevant work as a pharmacy clerk or a sales clerk, not as a cashier. The VE also testified that she could not perform work as a pharmacy clerk or a sales clerk. This was in agreement with Dr. Marinow's findings in 1985. As such, we find the ALJ's conclusion that Ms. Vertigan's past relevant work included work as "a cashier" was not supported by substantial evidence on the record as a whole.

---

4. Upon review, the magistrate judge upheld the ALJ's finding that she could perform her work as a cashier but found that the ALJ erred by finding Ms. Vertigan's past relevant work included the job of receptionist. There was no cross appeal by the Commissioner as to this finding.

In accordance with this finding, we conclude that Ms. Vertigan was not capable of performing any of her past relevant work.

## C.  Transferable Skills

The ALJ did not make a finding as to whether Ms. Vertigan had skills transferable to other jobs in the national economy because he determined that Ms. Vertigan could perform her past relevant work as a cashier.  Because we concluded that Ms. Vertigan's past relevant work did not include work as a cashier, and the VE found that Ms. Vertigan could not perform her past relevant work as a pharmacy clerk, we turn now to the question of whether Ms. Vertigan had transferable skills.

An ALJ can find a claimant's acquired skills are transferable to other jobs "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work.  This depends largely on the similarity of occupationally significant work activities among different jobs."  20 C.F.R. § 404.1568(d)(1).

According to the Dictionary of Occupational Titles, Ms. Vertigan's work as a pharmacy clerk is considered semi-skilled. With respect to the transferability of semi-skilled work, the Commissioner has cautioned ALJs to pay "close attention . . . to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do the work," because "[e]ven though semiskilled occupations require more than 30 days to learn, the content of work activities in some semiskilled jobs may be little more than unskilled."  Soc. Sec. Rul. 82–41, 1982 WL 31389, at *2. In other words, jobs at the lower level of semi-skilled work may not produce any transferable skills.

It is clear from the record that the only skills associated with Ms. Vertigan's work as a pharmacy clerk that the VE thought may be transferable to other jobs in the national economy were related to Ms. Vertigan's work as a cashier.  The VE never discussed the possibility of transferring any other skills that Ms. Vertigan had acquired as a pharmacy clerk because this type of work involved physical requirements that Ms. Vertigan could no longer perform.  The VE only considered whether Ms. Vertigan had skills associated with her occasional performance of cashier tasks because he felt that her physical limitations might allow her to perform this type of work.

Initially, the VE testified that Ms. Vertigan's occasional work as a cashier did not include any skills that were transferable. However, at a later point during the evidentiary hearing, the VE stated that some of the skills Ms. Vertigan acquired as a pharmacy clerk, specifically the skills related to being a cashier, were transferable. As we explained above, however, Ms. Vertigan has never worked exclusively as a cashier; thus, we concluded that Ms. Vertigan's past relevant work did not include work as a cashier.  *See Valencia,* 751 F.2d at 1086.  Therefore, we find the VE's testimony that Ms. Vertigan had transferable skills related to being a cashier. no longer relevant to the question of whether Ms. Vertigan had transferable skills.

Furthermore, the record detracts from any finding that she could do work as a cashier or any type of sedentary work since she cannot tolerate prolonged sitting or standing.  In a work environment requiring sedentary work, the Social Security Rules require necessary sitting as the ability to do such for six to eight hours a day.  *See* Soc. Sec. Rul. 83–10, 1983 WL 31251, at *5. Thus, we conclude that Ms. Vertigan has no skills that are transferable to other jobs in the national economy.

## D. Award of Benefits

The critical question at this point is whether we should remand for additional fact finding or simply for an award of benefits. We may remand for a benefits award "where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir.1989) (citations omitted). Such a remand for benefits is indicated particularly where a claimant has already experienced lengthy, burdensome litigation. *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir.1990) (remanding for benefits where the claimant had applied almost four years ago).

Examining the record as a whole, we find there are no "outstanding issues that must be resolved before a proper disability determination can be made." *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1401 (9th Cir.1988). Ms. Vertigan's claim of disability has been developed by an evidentiary hearing and numerous medical reports.

As explained in the Social Security Act, once an ALJ finds that a claimant can no longer do the kind of work she has done in the past, the ALJ will consider the claimant's residual functional capacity together with her vocational factors of age, education, and work experience to determine whether the claimant can work. 20 C.F.R. § 404.1560(c).

We find sufficient evidence in the record to make a determination that Ms. Vertigan was not able to perform substantial gainful activity under the Act. As we discussed previously, we hold the ALJ's determination that the claimant's allegations of pain lacked credibility is not supported by the record. As such, we conclude that her residual functional capacity cannot include light work. As stated in the Social Security Act, work is considered light if it "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." C.F.R. § 404.1567(b). Light work also involves "frequent lifting or carrying of objects weighing up to ten pounds." *Id.*

There is no credible evidence in the record to refute Ms. Vertigan's testimony that she is only able to sit or stand for a short length of time. Dr. Marinow's earlier reports in 1985 support this finding. In addition, the medical record indicates that Ms. Vertigan's work should not involve bending, stooping, twisting, etc., the type of actions associated with lifting. As such, we find the evidence supports our conclusion that Ms. Vertigan is unable to do light work. Accordingly, we conclude that Ms. Vertigan's residual functional capacity falls into the category of sedentary work.

Once it is determined that a claimant cannot perform her past relevant work, the burden shifts to the Commissioner to show that the claimant has skills that are transferable to other jobs in the national economy. *Beecher v. Heckler*, 756 F.2d 693, 695 (9th Cir.1985). When an impairment and related symptoms only impose exertional limitations, and a claimant's specific vocational profile is listed in a rule contained in Appendix 2 of Part 404, Subpart P, then the appropriate rule from Appendix 2 may be used to determine if a claimant is disabled. *See* 20 C.F.R. § 404.1569.

In this case, Ms. Vertigan's impairment was limited to the physical limitations imposed by her back condition. Thus only exertional limitations were involved, and we find it appropriate to use the rules from Appendix 2. The record indicates that as of the date Ms. Vertigan was last insured, she was fifty-four years old, "closely approaching advanced age," and she had a high school education. The record is irrefutable that her previous semi-skilled work

as a pharmacy clerk was not transferable. Thus, referring to the grid in Appendix 2 under Table No. 1—"Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)," we conclude that Rule 201.14 fits Ms. Vertigan's profile. As such, we find that Ms. Vertigan is disabled under the Act.

Based on the result of Appendix 2 and the fact that Ms. Vertigan initially applied for disability benefits back in 1985, more than sixteen years ago, we find it appropriate to remand for an award of benefits.

### E. Onset of Disability

■ The only remaining issue is the onset date of Ms. Vertigan's disability.[5] Social Security Ruling 83–20 states: "In addition to determining that an individual is disabled, the decision maker must also establish the onset date of disability." Soc. Sec. Rul. 83–20, 1983 WL 31249, at *1. As the record demonstrates, Ms. Vertigan had a surgical laminectomy and fusion in 1985 during the period of her insurability. Under the circumstances, all of the medical records which occupy the file need not be reexamined or repeated. We find these records clearly establish, at the very least, that since her second surgery in October 1985, when she was over the age of fifty, she has not been able to perform any substantial, gainful activity. This was verified by the various orthopedic reports and the history of her continued limitation and back pain.

We conclude, based upon the record as a whole, that Ms. Vertigan is entitled to disability benefits commencing October 17,

1985, which is the time that she underwent her second surgery.

REVERSED and REMANDED with award of benefits.

---

**5.** On appeal, Ms. Vertigan asserted that the ALJ erred by failing to call a medical expert to determine the onset date of her disability. We need not reach this issue based on our review of the record and our conclusion that Ms. Vertigan was disabled under the Act.

