FILED

NOT FOR PUBLICATION

APR 02 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

KATHRYN TERHUNE COTTON,

        Plaintiff - Appellant,

  v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

        Defendant - Appellee.

No. 08-35428

D.C. No. 3:06-CV-06324-HA

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Senior District Judge, Presiding

Argued and Submitted February 2, 2010
Seattle, Washington

Before: RYMER, GOULD and BYBEE, Circuit Judges.

    Kathryn Terhune Cotton appeals the district court's judgment affirming the

determination of the administrative law judge (ALJ) that she is ineligible for

disability benefits under Title II of the Social Security Act. We affirm.

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

I

Cotton testified that she had chronic fatigue, pain all over her body, worsening fibromyalgia, a sleep disorder, difficulty concentrating, and sometimes stayed in bed for days. She argues that the ALJ improperly discredited this testimony. However, the ALJ made specific findings stating clear and convincing reasons for doing so based on the following: medical evidence that Cotton was histrionic, prone to dramatize and embellish symptoms; the ALJ's own observations, which indicated that Cotton exaggerated the extent of her hearing loss; the absence of any physical disorders that might clinically produce symptoms of the severity claimed by Cotton; and the nature of Cotton's daily activities, which included walking a mile four times a week as well as caring for and training dogs, that exceeded her self-reported limitations. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (stating requirement for rejecting credibility of an applicant's testimony about the severity of impairments); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (noting that the ALJ may consider the applicant's reputation for truthfulness, inconsistencies either in her testimony or between her testimony and her conduct, her daily activities, her work record, and testimony from physicians about the nature and severity of symptoms). These findings are supported by substantial evidence. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not

engage in second-guessing.").  Among other things, Cotton's treating psychologist diagnosed her with histrionic personality disorder, a diagnosis that was confirmed by a reviewing psychologist and a medical expert who testified at the hearing.[1] There was no objective evidence of a back disorder, loss of motor strength, diminished reflexes, dermatomal loss of sensation, spasm, or loss of joint motion. Drs. McConochie, Mace, Lechnyr and Telew found no cognitive loss or impairment.  Cotton's occupational therapist noted Cotton's abnormal response to all five of Waddell's signs of non-organic pain, and found Cotton's pain diagram was indicative of symptom magnification which could not be explained on an organic basis.  Also, several medical reports indicated that Cotton had no medical need for the cane she carried.  In addition, the ALJ observed that although Cotton was able to hear her attorney and respond to questions from the bench, she refused to attend the hearing without her special assistance hearing dog.


II

Cotton further challenges the ALJ's failure to accept the disability opinions of treating physicians William Maier (a rheumatologist), James Morris (a pain management specialist), Nicholas Telew (a psychiatrist), and Ron Lechnyr (a

---

[1] Cotton did not apply for disability on the basis of her histrionic personality disorder.

clinical psychologist).[2] After considering and discussing the records of more than twenty medical providers, the ALJ rejected these particular opinions of disability because they were based primarily on self-reporting. Although an ALJ may not reject an uncontradicted medical opinion based on sheer disbelief, *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004), "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quotation marks omitted). As the ALJ properly discounted Cotton's self-reports as incredible, she could reject medical opinions based on those self-reports. The ALJ accepted the testimony of Dr. Davis, a psychologist who reviewed the record and opined that Cotton had moderate restrictions in dealing with people, performing activities of daily life, social functioning, and maintaining concentration, persistence or pace. In sum, while some doctors concluded Cotton was disabled and unable to work, others indicated that at most she had moderate limitations and could sustain employment. In these circumstances, the Commissioner's decision must be upheld because the evidence

---

[2] For the purposes of this appeal, we assume that both Dr. Morris and Dr. Maier were treating physicians. However, this conclusion is not free from doubt, as the ALJ concluded that Dr. Morris was not a treating physician, and Dr. Maier saw Cotton only twice.

would support either outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003).

III

Cotton maintains that fibromyalgia, diagnosed by her treating physicians, must be accepted as a "severe" impairment. A severe impairment is one that "significantly limits" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An ALJ must consider all of the evidence at Step Two to determine whether a medically determinable impairment significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987).

Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms . . . there are no laboratory tests to confirm the diagnosis." *Benecke*, 379 F.3d at 590. In any event, the ALJ did conclude that Cotton should be limited to light work due to the possibility that she might have fibromyalgia. For this reason, any error in failing to include fibromyalgia as a severe impairment is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that when an ALJ accounts for resulting limitations later in the sequential evaluation process, any error in finding the impairment non-severe at Step Two is harmless).

IV

Finally, Cotton faults the ALJ for discrediting her husband's testimony. The ALJ must consider lay evidence, 20 C.F.R. § 404.1513(d)(4), and must give reasons germane to each witness to discount that witness's testimony. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Lay witness observations may not be discounted on account of the applicant's lack of credibility. *Id.* The ALJ concluded here that Larry Cotton's testimony must be "significantly discounted" because Cotton herself was not credible and was histrionic. It was error to do so to the extent she discounted Larry Cotton's testimony based on Cotton's own lack of credibility. However, that error is harmless given the ALJ's finding that Cotton was histrionic, for this disorder caused her to exaggerate and advertise her symptoms. Thus, Larry Cotton's observations of Cotton were unreliable, even if they were true accounts of Cotton's behavior and symptoms, because it would not be possible to tell whether Larry Cotton had observed the effects of fibromyalgia and fatigue, or the effects of his wife's histrionic personality.

AFFIRMED.

*Cotton v. Astrue*, No. 08-35428

BYBEE, Circuit Judge, dissenting:

Cotton's allegations of disabling physical and mental pain were supported by the uncontradicted opinions of four treating doctors. The ALJ rejected Cotton's allegations based on a finding that she lacked credibility, and rejected the opinions of all four of her treating doctors largely based on the idea that their diagnoses were based on Cotton's own (incredible) self-reporting. The majority holds that both the ALJ's adverse credibility determination and her evaluation of the medical opinion evidence were supported by "clear and convincing" reasons. I respectfully disagree, and would hold that the ALJ erred in both of these determinations.

I

Because Cotton "produce[d] objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom," and because "there is no affirmative evidence of malingering, the ALJ [could] reject [Cotton's] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quotation marks omitted). The ALJ did not meet this burden.

First, the ALJ's selective reliance on Cotton's histrionic personality disorder to find that Cotton "dramatizes and exaggerates her symptoms" is not convincing.

None of Cotton's treating doctors found that Cotton had exaggerated her symptoms, and the only doctor to diagnose Cotton with histrionic personality disorder, Dr. Lechnyr, also diagnosed Cotton with fibromyalgia and at least three mental disorders—borderline personality disorder, dysthymic disorder, and pain disorder—not necessarily involving any tendency to exaggerate one's symptoms. The ALJ's cherry-picking of Cotton's histrionic personality out of her host of other disorders is not a convincing basis for the adverse credibility finding.

Moreover, the fact that Cotton was able to perform some routine activities, such as walking and using a computer, shows only that she could at times briefly perform certain light activities. It does not contradict her testimony that her impairments prevented her from performing a full-day's work on a daily basis. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to overall disability. One does not need to be utterly incapacitated to be disabled." (quotation marks omitted)).

Finally, the ALJ's statement that Cotton's testimony was not supported by objective evidence in the record is simply inaccurate. Multiple doctors found her to be disabled based on her fibromyalgia and various mental disorders, and these

2

doctors supported their conclusions with specific medical evidence, such as Dr. Morris's finding that Cotton had fourteen out of eighteen positive tender points and negative control points. Because "the doctors' reports and test results usually corresponded with the afflictions [Cotton] perceived, particularly [her fibromyalgia]," the ALJ erred in rejecting Cotton's testimony. *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005).

## II

Even if the ALJ had correctly determined that Cotton lacked credibility, the ALJ committed reversible error in her evaluation of the medical opinion evidence, both in (1) rejecting the opinions of Drs. Maier and Morris regarding their diagnoses of fibromyalgia and their assessment of Cotton's resulting limitations; and (2) rejecting the opinions of Drs. Telew and Lechynr regarding Cotton's mental limitations.

Where a treating doctor's opinion or ultimate conclusion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In rejecting the opinions of Drs. Maier and Morris, the ALJ reasoned that these physicians did not provide "objective findings" in support of their diagnoses but rather based these diagnoses on Cotton's own self-reporting, which the ALJ found lacked credibility.

3

Fibromyalgia "is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Thus, we have stated explicitly that an ALJ is not permitted to reject a treating physician's opinion regarding fibromyalgia because of a lack of supporting "objective" evidence. *See id.* at 594 ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement." (alteration and quotation marks omitted)). Even putting aside this principle from *Benecke*, Drs. Morris and Maier did in fact support their diagnoses with objective findings, including Dr. Maier's finding that Cotton had "widespread triggering" and chronic back pain, and Dr. Morris's finding of fourteen out of eighteen positive tender points and negative control points.

Moreover, I find unconvincing the ALJ's reasoning that the doctors' opinions should be rejected because they were based on Cotton's self-reporting. The majority relies on the proposition in *Tommasetti* that "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." 533 F.3d at 1041 (quotation marks omitted). However, *Tomasetti* did not hold that such reasoning could constitute "clear and convincing reasons" for rejecting a doctor's uncontradicted testimony but rather "specific and legitimate reasons," *id.*, which is

4

a lower standard of review used when the ALJ is evaluating a *contradicted* medical opinion, *see Lester*, 81 F.3d at 830. I do not believe that the mere lack of credibility of the claimant can constitute "clear and convincing reasons" for rejecting the uncontradicted opinions of two treating physicians. The circularity of that logic is starkly evident in this case: essentially, the ALJ found that Cotton lacked credibility because her allegations were unsupported by objective medical evidence, and then rejected the opinions of her treating doctors (the objective medical evidence she provided) because they were based on Cotton's testimony. Under this reasoning, it is hard to imagine how Cotton could have possibly demonstrated that she had fibromyalgia.

The ALJ erred in rejecting the opinions of Drs. Telew and Lechnyr for similar reasons. A psychologist's opinion is almost always based to a large degree on the patient's "self-reporting," so an over-reliance on this fact would make it extremely difficult for a claimant to establish disability based on mental impairments. Furthermore, contrary to the ALJ's assertions, both Drs. Telew and Lechnyr provided a variety of objective findings in support of their conclusions, including findings that Cotton suffered from impaired concentration, persistence, and pace, and that she exhibited symptoms of borderline personality disorder, dysthymic disorder, pain disorder, and polysubstance abuse in remission.

5

The ALJ's determination is especially unconvincing with respect to Dr. Lechnyr, who found that Cotton was disabled based on a combination of testing and clinical interviews despite being the only doctor to diagnose her with histrionic personality disorder, the basis of the ALJ's claim that Cotton was prone to exaggeration. The ALJ apparently rejected all of Dr. Lechnyr's conclusions except for his diagnosis of histrionic personality disorder, a line of reasoning I consider quite dubious.

Finally, the ALJ erred in placing more weight on the opinion of Dr. Davis—a nonexamining physician—than on the opinions of Cotton's treating doctors, *see Lester*, 81 F.3d at 831 (opinion of nonexamining doctor cannot by itself constitute substantial evidence that justifies rejection of treating physician), particularly in the context of fibromyalgia, *see Benecke*, 379 F.3d at 594 n.4 (noting that the opinions of rheumatologists—specialists in fibromyalgia—are given particular weight with respect to fibromyalgia because this disease "is poorly understood within much of the medical community"). The majority reasons that since "some doctors . . . indicated that at most [Cotton] had moderate limitations and could sustain employment[,] . . . the Commissioner's decision must be upheld because the evidence would support either outcome." Mem. Dispo. at 4-5. This reasoning conflicts with our requirement that an ALJ give more weight to the

6

opinions of treating doctors than to doctors that do not treat the claimant. *See Lester*, 81 F.3d at 830.

In sum, four treating doctors opined that Cotton could not work due to her physical and mental impairments and provided extensive evidence for their conclusions that is not contradicted by any treating or examining physician. Because the ALJ failed to provide "clear and convincing reasons" for rejecting these uncontradicted opinions, I respectfully dissent.