NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 22 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

EVAN ROY AUSTIN,

Plaintiff-Appellant,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

Defendant-Appellee.

No.     18-35183

D.C. No. 1:16-cv-02035-JO

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

Submitted May 14, 2020[**]
Portland, Oregon

Before:  BYBEE and VANDYKE, Circuit Judges, and CHHABRIA,[***] District
Judge.

Concurrence in part and dissent in part by Judge VANDYKE

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***]      The Honorable Vince Chhabria, United States District Judge for the
Northern District of California, sitting by designation.

Appellant Evan Roy Austin appeals the district court's ruling affirming the denial of his application for disability benefits. We affirm in part, reverse in part, and remand with instructions to remand to the agency for further proceedings.

**1.** Although several medical professionals offered written opinions about Austin's limitations, Dr. Francis was the only one to testify at either of the two hearings. Dr. Francis opined that Austin should be limited to occasional handling, feeling, and fingering—an opinion that supports Austin's disability claim. But the ALJ did not discuss this opinion, which the Commissioner concedes is error. The Commissioner argues that this court can infer the ALJ's reasoning for not discussing Dr. Francis's opinion, but the ALJ's decision does not permit any inference about why Dr. Francis was left unmentioned.

**2.** The ALJ gave only partial weight to a third-party report submitted by Austin's son, Kamryn Larsen, reasoning that Larsen had relied heavily on Austin's "less than fully credible subjective complaints." At least as it relates to his description of Austin's physical limitations, the conclusion that Larsen relied heavily on Austin's subjective complaints is belied by the report and finds no other support in the record. Larsen was twenty-two years old at the time, lived with his father, observed him every day, and was in a position to provide a first-hand account of the deterioration of his father's condition. Thus, without identifying some other germane reason to discount Larsen's description of Austin's physical

limitations, the ALJ was required to treat it as bolstering the credibility of Austin's testimony. *See Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993); *see also Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

**3.** As for Austin's own credibility, the ALJ was required to articulate specific, clear, and convincing reasons for discounting it unless the record contained affirmative evidence of malingering. *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). Some aspects of the ALJ's credibility determination regarding the severity of Austin's symptoms find support in the record and were adequately explained—such as the finding that Austin exaggerated his dependence on crutches. But several of the reasons given by the ALJ for discounting Austin's credibility were either contradicted or unsupported by the record. For example, the adverse credibility finding was based in part on the assertion that Austin had opted against surgery on his right arm despite having been "very happy with the results" of a comparable surgery on his left arm. But the record demonstrates that while Austin was initially happy with the surgery, he soon soured on it because his pain returned. This explains his decision to take a more conservative approach to the other arm and renders that decision an improper basis for an adverse credibility finding. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also cited

the fact that Austin's neurological exam results had been normal, but the record does not support a conclusion that normal exam results are inconsistent with Austin's claimed symptoms. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Nor is the fact that Austin actively cares for his five-year-old daughter inconsistent with his testimony that his limitations prevent him from working a full day. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

**4.** The Commissioner fleetingly argues that the record contains affirmative evidence of malingering, thereby absolving the ALJ of the obligation to articulate clear and convincing reasons for an adverse credibility finding. *See Carmickle*, 533 F.3d at 1160. For this proposition the Commissioner cites the report of Dr. Sorweide, which makes brief reference to "signs of malingering" without any accompanying explanation. But the ALJ appears to have rejected this view—she did not cite Dr. Sorweide's statement in connection with her adverse credibility determination, declined to give his report full weight, and rejected his assertion that Austin had no limitations, concluding instead that Austin had severe impairments that impose more than minimal limitations on his ability to work. We thus do not consider Dr. Sorweide's unexplained notation to constitute affirmative

4

evidence of malingering. Nor do we equate a claimant's possible exaggerations regarding the severity of his symptoms with affirmative evidence of malingering.

**5.** The ALJ did not err in discounting the opinion of Nurse Practitioner Harrison. Under the pre-2017 Social Security regulations that govern this case, the ALJ could discount the opinion of a nurse practitioner like Harrison for any "germane" reason. *See Ghanim*, 763 F.3d at 1161; 20 C.F.R. § 404.1527. The ALJ reasoned that Harrison's physical medical source statement identified limitations significantly more severe than the limitations evidenced elsewhere in the medical record—including Harrison's own treatment notes. This was a germane reason to discount Harrison's opinion. *See Molina*, 674 F.3d at 1112.

**6.** Substantial evidence supports the ALJ's determination that Austin previously worked as a garage supervisor. The vocational expert testified that Austin performed this job, and Austin told the agency that "most" of his time in his prior job was spent in a supervisory role. *See Stacy v. Colvin*, 825 F.3d 563, 570 (9th Cir. 2016); *see also Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985).

**7.** The errors discussed above are significant enough, and sufficiently intertwined with the aspects of the ALJ's analysis that find support in the record, that we cannot conclude they were harmless. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015).

Austin is awarded costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**



*Evan Austin v. Andrew Saul*, No. 18-35183

VANDYKE, Circuit Judge, concurring in part and dissenting in part.

I concur with paragraphs five and six of the panel's memorandum disposition, affirming the ALJ's decision to discount Nurse Harrison's testimony and agreeing the ALJ correctly defined Austin's previous position as a garage supervisor. I respectfully dissent as to the remainder because Dr. Sorweide's observed "signs of malingering," combined with Austin's obvious embellishments, constituted evidence of malingering such that we should apply a more deferential standard of review to the ALJ's treatment of Austin's testimony. Applying that standard, we should affirm the ALJ's denial of Austin's disability benefits.

Our review of the ALJ's decision is generally under the deferential "substantial evidence" standard, but where an ALJ rejects a claimant's testimony about the severity of his symptoms, she must provide "clear and convincing" reasons "*[u]nless* there is affirmative evidence showing that the claimant is malingering." *Reddick v. Chater*, 157 F.3d 715, 720, 722 (9th Cir. 1998) (emphasis added) (citation omitted). Ninth Circuit precedent does not necessarily require an explicit *finding* of malingering, just "affirmative evidence" of it. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (citation omitted); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

1

I diverge from the majority in this case because I believe the review of the ALJ's consideration of Austin's testimony should be for "substantial evidence" because of the affirmative evidence of malingering in the record. The only independent *examining* physician, Dr. Sorweide, directly stated that Austin "shows signs of malingering." The ALJ cited this observation in her opinion. The ALJ did give Dr. Sorweide's opinion "partial weight," but only tempered Dr. Sorweide's conclusion that Austin could work "without physical limitations" because Austin's "impairments would reasonably account for at least *some* limitations." That is not inconsistent with malingering; indeed, a person who is malingering typically has *some* real symptoms, which he or she exaggerates.

In addition to Dr. Sorweide's opinion, the ALJ's credibility analysis pointed to clear exaggerations in Austin's testimony that were belied by other evidence in the record. Austin testified that his pain was so severe he was on crutches most of the time between 2009 and 2013, but the ALJ cited to medical evidence from 2012 which indicated Austin had no issues walking. The record also contains evidence from 2009, 2011, and 2015 that Austin was capable of walking without assistance. This led the ALJ to conclude that Austin's testimony about the "intensity ... of these symptoms [was] not entirely credible" and "well in excess of what is demonstrated in the medical evidence of record." In other words, she found him not credible specifically *because* she believed he exaggerated his pain.

2

This is affirmative evidence of malingering. Our standard of review for the ALJ's treatment of Austin's testimony should thus be for "substantial evidence," rather than requiring "clear and convincing" reasons. *Reddick*, 157 F.3d at 720, 722. The ALJ's detailed comparison of Austin's testimony regarding his limitations to evidence in the record (describing his continuing self-employment and ability to relieve some of his pain with ibuprofen) provided the required "substantial evidence" to properly discount his testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) *superseded in part on other grounds by* 20 C.F.R. § 404.1502 ("[Capacity for work demonstrated by daily activities] may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Once established that the ALJ validly discounted Austin's testimony, her omission of Dr. Francis's opinion and her decision to only partially credit Austin's son's testimony were harmless errors. *See id.* at 1115 ("[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'") (citation omitted). The ALJ accounted for similar limitations presented by Dr. Francis and Austin's son in a hypothetical she posited to the vocational expert, asking the expert to identify jobs for those with only "occasional" use of the right hand. The ALJ further considered testimony that one job ("greeter") was available for persons with only "occasional" use of both hands.

"We will affirm the ALJ's determination of [petitioner's residual functional capacity (RFC)] if the ALJ applied the proper legal standard and [the] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ incorporated the vocational expert's responses to both hypotheticals in her determination of Austin's RFC and appropriately supported a finding of "not disabled." Any lack of attribution or weight given to specific testimony from either Dr. Francis or Austin's son was harmless to the overall result.

Because I would affirm the ALJ's denial of Austin's application for disability benefits, I respectfully dissent.