Kathryn L. BENECKE, Plaintiff–Appellant,

v.

Jo Anne B. BARNHART, Commissioner of Social Security Administration, Defendant–Appellee.

No. 03–15155.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 2004.

Filed Aug. 9, 2004.

Mark Caldwell, Caldwell & Ober, Phoenix, AZ, for the plaintiff-appellant.

Pamela M. Wood, Social Security Administration, Denver, CO, for the defendant-appellee.

Before: B. FLETCHER, REINHARDT, Circuit Judges, and RESTANI, Judge.*

BETTY B. FLETCHER, Circuit Judge:

Plaintiff–Appellant Kathryn L. Benecke appeals a decision of the district court remanding to the Social Security Administration (SSA) for additional administrative proceedings instead of an immediate award of disability insurance benefits. Because there are no outstanding issues that must be resolved and it is clear from the record that Benecke is entitled to benefits, we reverse and remand to the district court with instructions to remand to the Commissioner for an award of benefits.

## I. BACKGROUND

Benecke suffers from fibromyalgia, previously called fibrositis, a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue. *See, e.g., Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech, Inc.,* 125 F.3d 794, 796 (9th Cir.1997); *Brosnahan v. Barnhart,* 336 F.3d 671, 672 n. 1 (8th Cir.2003). Com-

---

* The Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

mon symptoms, all of which Benecke experiences, include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease. *See Brosnahan,* 336 F.3d at 672 n. 1; *Cline v. Sullivan,* 939 F.2d 560, 563 (8th Cir.1991). Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community. The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms. The American College of Rheumatology issued a set of agreed-upon diagnostic criteria in 1990, but to date there are no laboratory tests to confirm the diagnosis. *See Jordan v. Northrop Grumman Corp.,* 370 F.3d 869, 872 (9th Cir.2004); *Brosnahan,* 336 F.3d at 672 n. 1.

Benecke began experiencing fibromyalgia symptoms in December 1997. In March 1999, she filed an application for disability insurance benefits, alleging disability beginning in April 1998. The SSA denied her claim initially and upon reconsideration, and Benecke timely filed a request for a hearing before an Administrative Law Judge (ALJ). The ALJ denied Benecke's claim, finding that Benecke suffers from "severe impairments" but retains residual functional capacity to perform light or sedentary work, including her past sedentary work as a telemarketer. The Social Security Appeals Council denied Benecke's request for review, and the ALJ's decision became the final decision of the Commissioner.

Benecke filed a complaint in district court challenging the Commissioner's decision. The district court granted Benecke's motion for summary judgment in part, holding that the ALJ committed legal error in discounting Benecke's pain testimony and the opinions of Benecke's treating

physicians. However, the district court declined to remand for an award of benefits, instead remanding for additional administrative proceedings. Benecke timely appealed that holding. Because the Commissioner did not cross-appeal the district court's partial grant of summary judgment in Benecke's favor, the sole issue in this case is whether the district court abused its discretion by remanding for further proceedings rather than for an award of benefits.

## II. DISCUSSION

### A. *Jurisdiction*

The district court had jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). We have jurisdiction to review the district court's final decision under 28 U.S.C. § 1291.

### B. *Standard of Review*

■ The decision to remand to the SSA for further proceedings instead of for an immediate award of benefits is reviewed for abuse of discretion. *Harman v. Apfel,* 211 F.3d 1172, 1174, 1178 (9th Cir.2000).

### C. *Evidence of Disability*

We recount the evidence in the administrative record in some detail because it is central to our conclusion that Benecke clearly is entitled to an immediate award of benefits.

### 1. *Medical History*

The ALJ received written reports on Benecke's condition from numerous treating physicians. Since Benecke first sought treatment in December 1997, her doctors have prescribed a variety of anti-inflammatory medications, painkillers, and antidepressants, and she has undergone physical therapy, massage treatments, aquatic exercise therapy, and participated in a fibro-

myalgia support group to help her cope with her condition. Benecke worked intermittently from the onset of her disease until April 1998 when she stopped working entirely. Before the onset of her fibromyalgia, Benecke had been employed full-time for more than a decade, except for brief periods between jobs.

As noted above, fibromyalgia is poorly-understood within much of the medical community, which may explain why Benecke saw a succession of physicians before being properly diagnosed. In December 1997, Benecke was examined by Dr. Berghoff, an orthopedist. She complained that she had been unable to work due to pain throughout her body, fatigue, and problems with memory and concentration. Berghoff prescribed anti-inflammatory medications and referred her to a physical therapist for her pain.

In February 1998, Benecke visited a hand and wrist surgeon who also was unable to diagnose her condition, but who suggested that it might be a rheumatic disease. In April 1998, Benecke's sought treatment for severe pain at a hospital emergency room. That same month, she reported to another physician that the pain throughout her body was so severe that it interfered with her ability to complete certain routine tasks and caused her to miss work.

In March and June 1998, Benecke sought treatment from Dr. Drazkowski, a neurophysiologist, who concluded that Benecke might be suffering from fibromyalgia or connective tissue disease. Drazkowski advised Benecke that she should not return to work at that time because of her persistent pain. Drazkowski referred Benecke to a rheumatologist, Dr. Harris, who diagnosed her with fibromyalgia in July 1998. Harris treated Benecke for her condition regularly through December 1998. In August 1998, Benecke also visited a pain management specialist who confirmed her diagnosis.

In February 1999, Dr. Pace, a second rheumatologist, began treating Benecke's fibromyalgia. Pace's notes from Benecke's appointments typically state that Benecke experienced pain in her hands, wrists, elbows, shoulders, neck, back, hips, knees, ankles, and feet; morning stiffness; numbness; headaches; fatigue; and decreased sleep, with three to five hours of restful sleep per night. During the course of treatment, Pace prescribed Benecke a variety of medications for pain and depression and referred Benecke for physical therapy, massage, and aquatic exercise therapy.

Pace filled out two questionnaires assessing Benecke's ability to do work-related activities in mid–1999, after Benecke filed her disability benefits application. Pace indicated on the form that Benecke suffered from symptoms consistent with those described above; her pain and fatigue frequently were severe enough to interfere with her attention and concentration; and she should not sit, stand, or walk for more than one hour at a time. On the basis of these findings, Pace concluded that Benecke would not be able to sustain full-time work.

In January 2000, a third rheumatologist, Dr. Gluck, began treating Benecke for fibromyalgia. Benecke reported symptoms and received treatment consistent with her previous medical history. In July 2000, Gluck completed two questionnaires assessing Benecke's ability to do work-related activities. Gluck reported Benecke's symptoms and stated that Benecke's constant pain and fatigue were severe enough to interfere with her attention and concentration. Like Pace, Gluck concluded that Benecke would not be able to sustain full-time work.

### 2. Opinions of Non–Treating Physicians

At the request of the Arizona Department of Economic Security (ADES), Benecke visited two physicians who evaluated her condition in connection with her disability application. Because they each examined Benecke only once, their opinions are given less weight than the physicians who treated her. *See Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527.[1]

In December 1999, Dr. Cunningham, a practitioner of internal medicine, recorded symptoms consistent with those described above and provided a diagnosis of fibromyalgia. Cunningham stated that Benecke was able to attend school, drive, and do errands, and he concluded that Benecke's "[s]ubjective complaints far outweigh objective findings."

In January 2000, Dr. Breen, a psychiatrist, evaluated Benecke's mental health. Breen noted that Benecke was able to take one college course at a time with difficulty. Breen observed no psychiatric symptoms of note. Breen concluded that some of Benecke's reported physical symptoms were "scarcely credible." He diagnosed her with somatization disorder, a condition in which a patient's perceived physical problems are of psychological origin. Breen also indicated that Benecke was unable or seriously limited in her ability to understand and carry out complex instructions; use judgment; and deal with work-related stress.

### 3. Administrative Hearing Testimony

#### a. Benecke's Testimony

At the hearing, Benecke testified to the following: She experiences constant pain throughout her entire body. Although prescription pain medication reduces her pain somewhat, it interferes with her ability to concentrate. Due to severe fatigue, she naps for one to two hours daily. When awake, she spends most of her time sitting in a recliner because her pain increases whenever she does anything else. She has been able to take one class at a time at Arizona State University, but only with special accommodations from the school's disability office. She remains able to drive, but driving further than five miles causes severe pain in her arms.

#### b. Testimony from Non–Examining Physicians

A retired practitioner of internal medicine who reviewed Benecke's file testified at the hearing that he believed Benecke did not suffer from any physical condition, and that her reported symptoms were psychological. He opined that if "this was [sic] veterinary medicine you'd have to say she's a very healthy person." However, the doctor stated that he believed Benecke could not maintain employment because of her psychological problems. A psychologist who reviewed Benecke's file testified similarly that he believed that Benecke suffers from somatization disorder rather than fibromyalgia. The opinions of these non-examining doctors are entitled to less weight than doctors who treated or examined Benecke. *Lester,* 81 F.3d at 830.

#### c. Vocational Expert Testimony

A vocational expert (VE) testified that Benecke's last job, as a telemarketer, was a semi-skilled job, performed at the sedentary level. He further testified that many telemarketing employers make con-

---

1. We note that our recent decision in *Batson v. Commissioner,* 359 F.3d 1190, 1194–95 (9th Cir.2004) does not modify our well-established rules giving primary weight to the views of treating physicians, absent specific and legitimate reasons for rejecting them that are supported by substantial evidence.

siderable efforts to accommodate disabled employees. However, in response to a hypothetical question posed by Benecke's counsel, he responded that someone with the limitations suggested by Dr. Breen—which were less severe than those identified by the rheumatologists—would not be able to maintain employment as a telemarketer.

### D. *Administrative Decision*

The ALJ found that Benecke suffers from both fibromyalgia and somatization disorder, combining the diagnosis of Benecke's treating rheumatologists with the diagnosis of the non-treating doctors who believed her condition to be of psychological rather than physical origin. The ALJ found that Benecke was not working, and that her medical conditions were "severe" within the meaning of the Social Security Act, but that they did not meet or equal the criteria for listed impairments. The ALJ subsequently concluded that Benecke retains residual functional capacity to perform light or sedentary work, including her past work as a telemarketer, and thus, was not entitled to disability benefits. *See* 20 C.F.R. § 404.1520 (describing the five-step sequential evaluation process used to determine whether a claimant is disabled). In making this determination, the ALJ discredited Benecke's testimony about the extent of her impairments, as well as Benecke's treating physicians' opinions. The ALJ opined that it "appears ... the claimant has 'bought into' being an invalid, and, therefore, considers herself disabled as a result."

### E. *Analysis*

■■ *Remand for further administrative proceedings is appropriate* if enhancement of the record would be useful. *See Harman,* 211 F.3d at 1178. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *See Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir.1996); *Varney v. Secretary of Health and Human Services,* 859 F.2d 1396, 1399 (9th Cir.1988). More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman,* 211 F.3d at 1178; *see also McCartey v. Massanari,* 298 F.3d 1072, 1076–77 (9th Cir.2002); *Smolen,* 80 F.3d at 1292.

■ Where the *Harman* test is met, we will not remand solely to allow the ALJ to make specific findings regarding excessive pain testimony. Rather, we take the relevant testimony to be established as true and remand for an award of benefits. *Varney,* 859 F.2d at 1401; *see also Reddick v. Chater,* 157 F.3d 715, 728 (9th Cir.1998) (quoting *Varney*); *Lester,* 81 F.3d at 834 (same); *Swenson v. Sullivan,* 876 F.2d 683, 689 (9th Cir.1989) (same); *but cf. Connett v. Barnhart,* 340 F.3d 871, 876 (9th Cir.2003) (holding that the court has flexibility in crediting petitioner's testimony if substantial questions remain as to her credibility and other issues must be resolved before a determination of disability can be made).

■ The district court held that the ALJ erred in discounting Benecke's credibility and the evaluations of her treating

physicians. We agree.[2] The record provides little support for the ALJ's credibility finding. In discrediting Benecke's testimony about the severity of her symptoms, the ALJ relied largely on Benecke's ability to carry out certain routine tasks. As described above, Benecke's daily activities are quite limited and carried out with difficulty. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir.2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).

■■ Likewise, the ALJ erred in discounting the opinions of Benecke's treating physicians, relying on his disbelief of Benecke's symptom testimony as well as his misunderstanding of fibromyalgia.[3] The ALJ erred by "effectively requir[ing] 'objective' evidence for a disease that eludes such measurement." *Green–Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir.2003) (reversing and remanding for an award of benefits where the claimant was disabled

by fibromyalgia). Every rheumatologist who treated Benecke (Doctors Harris, Pace, and Gluck) diagnosed her with fibromyalgia.[4] Benecke consistently reported severe fibromyalgia symptoms both before and after diagnosis, and much of her medical record substantially pre-dates her disability application. Sheer disbelief is no substitute for substantial evidence.

■ Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true. *See Harman*, 211 F.3d at 1179; *Smolen*, 80 F.3d at 1281–83; *Varney*, 859 F.2d at 1398. We turn to the other two facets of the *Harman* inquiry, and we conclude that there are no outstanding issues that must be resolved before a determination of disability can be made and that it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. *See Harman*, 211 F.3d at 1178.

■ The district court remanded for additional administrative proceedings instead of an award of benefits because the

2. The Commissioner did not appeal this holding, so we consider whether the ALJ failed to provide sufficient reasons for rejecting the evidence only for the purposes of determining whether remand for an award of benefits is appropriate under *Harman*, 211 F.3d at 1178.

3. The ALJ expressed his skepticism at length during the hearing. For example, the ALJ asserted that only one doctor was "really saying the fibromyalgia." [sic] After Benecke's counsel pointed out that several doctors diagnosed Benecke with fibromyalgia, the ALJ asked, "what on earth is that based on? I mean, there's no—I mean, how am I suppose [sic] to sit up here and listen to doctors tell me that there is nothing physical that they can find, yet she's so restricted ... [?] I just don't find that credible. ... I'm not seeing anything from the physical that would in any way justify those conclusions from the Rheu-

matologist other than trying to help the claimant get disability.... There's just the paucity of any objective findings whatsoever.... I mean, there was almost like a really buying [sic] into the syndrome in a way."

4. Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 404.1527(d)(5). Rheumatology is the relevant specialty for fibromyalgia. *See Jordan*, 370 F.3d at 873. Specialized knowledge may be particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community. *See, e.g., id.* at 872; *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996) (describing fibromyalgia as an "elusive and mysterious" disease).

vocational expert testimony in this case was quite limited. The district court, whose opinion generally is thorough and well-reasoned, understood *Harman* to require remand for further proceedings whenever there is not vocational expert testimony stating that a person with the precise limitations established by the improperly rejected evidence is disabled. *See Harman,* 211 F.3d at 1178. We now clarify that in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate. In this case, remanding for further administrative proceedings would serve no useful purpose and would unnecessarily extend Benecke's long wait for benefits.

■ Generally when a court of appeals reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura,* 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985)); *see also Moisa v. Barnhart,* 367 F.3d 882, 886–87 (9th Cir. 2004) (stating, in a Social Security disability case, that remand is appropriate in most circumstances). In *Ventura,* remand was required to allow an agency to consider in the first instance an issue that it had not previously addressed. *See* 537 U.S. at 13, 123 S.Ct. 353. In contrast, in this case, the ALJ's decision specifically addressed the central remaining issue in Benecke's

disability claim—whether Benecke retains residual functional capacity to perform sedentary work. The ALJ's determination that Benecke retains functional capacity to perform sedentary or light work was in error; because the record, including the limited vocational expert testimony, clearly establishes that Benecke cannot perform a sedentary job or any other substantial gainful work that exists in the national economy, we need not return the case to the ALJ to make a residual functional capacity determination a second time. Allowing the Commissioner to decide the issue again would create an unfair "heads we win; tails, let's play again" system of disability benefits adjudication. *See Moisa,* 367 F.3d at 887 (noting that the "Commissioner, having lost this appeal, should not have another opportunity ... any more than Moisa, had he lost, should have an opportunity for remand and further proceedings").

Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to "tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand." *Varney,* 859 F.2d at 1398. Requiring remand for further proceedings any time the vocational expert did not answer a hypothetical question addressing the precise limitations established by improperly discredited testimony would contribute to waste and delay and would provide no incentive to the ALJ to fulfill her obligation to develop the record. *See, e.g., Celaya v. Halter,* 332 F.3d 1177, 1183 (9th Cir.2003) (reversing the denial of disability benefits where the ALJ failed in his duty to fully and fairly develop the record).[5]

---

**5.** Benecke's counsel could have bolstered his client's case by asking the VE further questions. However, he may not have done so

because the ALJ already had made it clear that he did not find evidence of Benecke's fibromyalgia to be credible.

Even without extensive VE testimony, Benecke's entitlement to disability benefits is clear. The VE testimony establishes that Benecke would be unable to perform her past work as a telemarketer, a sedentary job with limited physical demands. *See Reddick,* 157 F.3d at 729–30 (remanding for an immediate award of benefits where vocational expert testimony established that the claimant could not perform her previous job, which was classified as sedentary work). There is no basis on which an ALJ, crediting the evidence of Benecke's severe pain and serious physical limitations, could conclude that Benecke could perform a different sedentary job, especially in light of the VE's testimony that telemarketing employers make considerable efforts to accommodate disabled workers. Benecke's activities are quite limited and carried out with difficulty. Doctors' notes pre dating Benecke's application document her attempts to manage her pain and demonstrate that she attempted unsuccessfully to return to work after the onset of her disease, but found herself unable to do so. Several treating physicians have stated that Benecke would be unable to maintain employment in her condition. Because the evidence establishes that Benecke would be unable to maintain employment while managing her pain and fatigue, remand for further administrative proceedings serves no useful purpose and is unwarranted.

## III. CONCLUSION

As the district court held, the ALJ improperly discredited much of the evidence. Because there is no remaining issue that must be resolved and it is clear from the record that Benecke is entitled to disability benefits, we conclude that the district court abused its discretion by remanding for further administrative proceedings rather than for an immediate award of benefits. Accordingly, we **REVERSE** the decision of the district court and **REMAND** with instructions to remand to the Commissioner of Social Security for an award of benefits.