April TROTTER, Plaintiff—Appellant,

v.

Michael J. ASTRUE,* Commissioner of Social Security Administration, Defendant—Appellee.

No. 06–55844.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 6, 2008.

Filed Feb. 27, 2008.

---

* Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

Stephanie M. Simpson, Esq., Northridge, CA, for Plaintiff–Appellant.

Marcus M. Kerner, Esq., USSA–Office Of The U.S. Attorney Santa Ana, CA, John C. Cusker, Esq., Grace B. Carter, Esq., SSA–Social Security Administration, San Francisco, CA, for Defendant–Appellee.

Before: HALL, GRABER, and BERZON, Circuit Judges.

## MEMORANDUM **

We consider whether the Social Security Administration's administrative law judge ("ALJ") properly denied April Trotter's application for Supplemental Security Income under Title XVI of the Social Security Act. We review de novo the district court's decision to affirm the ALJ and may reverse if we find that the "disability determination ... contains legal error or is not supported by substantial evidence." *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir.2007). We reverse and remand for further proceedings.[1]

Trotter contends that the ALJ wrongly discredited Trotter's testimony and the reports of two of her treating doctors, general practitioner Dr. Lang and psychiatrist Dr. Karim. The ALJ was required to provide "specific, cogent" reasons that were "clear and convincing" to reject Trotter's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999) (internal quotation marks omitted). Similarly, he was required to provide "specific and legitimate reasons supported by substantial evidence in the record" to discredit the views of Drs. Lang and Karim, treating physicians whose opinions were contradicted by those of other doctors. *Orn,* 495 F.3d at 632 (internal quotation marks omitted).

■ 1. The ALJ did not err in discrediting evidence of Trotter's physical disabilities and adopting a more moderate view of her physical impairments. Trotter's relatively unremarkable medical test results, combined with the mismatch between Dr. Lang's reports and the objective medical evidence, supported the ALJ's reasoning. We therefore do not disturb the ALJ's conclusions regarding Trotter's physical limitations.

■ 2. The ALJ improperly discredited Trotter's testimony with regard to her mental illness. The ALJ relied heavily on Trotter's supposed failure to describe her symptoms or to report them to other parties. The ALJ's reliance on this factor was not supported by substantial evidence. Trotter did not report drowsiness caused by her medications to her doctors, but that fact has limited relevance to the question of her underlying mental condition. Further, Trotter explained that she had not mentioned hearing voices or sought treatment earlier because she was afraid of losing her children and of being ridiculed, and she reported the voices once she be-

---

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1. Trotter's motion to supplement the record with documents relating to a later successful application is denied. No "extraordinary circumstances" are present here. *See Lowry v. Barnhart,* 329 F.3d 1019, 1024–26 (9th Cir. 2003).

gan seeing a psychiatrist. Drs. Lang and Ross also noted increasing signs of anxiety and other mental problems, including Trotter's report that she felt like bugs were crawling all over her. Indeed, Trotter's first visit to Dr. Karim was precipitated by Dr. Lang's belief that Trotter was seriously mentally ill and not responding to treatment after suffering a breakdown. Moreover, Trotter has a history of suicide attempts.

Finally, the fact that Trotter's lawyer did not mention the psychotic symptoms in her January 2001 brief or at a hearing that month means very little. That first hearing, the results of which were later vacated because it was held while Trotter was in the hospital, occurred when neither the ALJ nor Trotter's counsel had the benefit of all of her medical records. Moreover, contrary to the ALJ's impression, Dr. Karim provided her reports *after* the brief was due and after the hearing was held, so the lawyer could not have been expected to cite them.

In sum, the ALJ did not provide specific, cogent, record-supported reasons to discredit Trotter's mental health testimony. We therefore credit Trotter's testimony as true insofar as it establishes that she faced marked limitations in her activities of daily living and general ability to work due to depression, anxiety, and psychotic symptoms, at least as of November 2000, when she had a break-down and began to see a psychiatrist. *See Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir.2004).[2]

■ 3. The ALJ also erred in discrediting Dr. Karim's conclusions. Based on Trotter's driving record, the ALJ reasoned that Trotter must have deceived Dr. Karim about her literacy and, presumably, about her mental impairments.

But while her literacy is limited, she is not entirely illiterate. Moreover, there is nothing in the record showing that Trotter ever had a driver's license or, if she did, that she was required to pass a written driver's test, as opposed to taking the test in a way that accommodated her difficulty with reading. The ALJ's reasoning in this regard is untethered to any evidence.

Instead, the ALJ relied largely on the opinion of Dr. Bedrin. Dr. Bedrin's report is, at best, confused and, at worst, self-contradictory. Despite recording Trotter's account of her delusions and several suicide attempts, Dr. Bedrin nonetheless wrote that she denied suicidal ideation and psychotic symptoms. His decision to minimize Trotter's symptoms is particularly questionable because he also noted that Trotter was, at that time, taking Serzone, an anti-depressant, BuSpar, an anti-anxiety drug, and Zyprexa, which is prescribed for bipolar disorder. Dr. Bedrin's examination report did not justify discrediting Dr. Karim.

We therefore credit Dr. Karim's views regarding Trotter's serious mental illness and her assignment of a GAF score of 37. *See Benecke,* 379 F.3d at 594. Having so concluded, we have discretion whether to remand for benefits or for further agency consideration. *See McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir.2002). We will do the latter.[3] Trotter's impairments have clearly lasted, but it is not

---

2. Because the record, aside from Trotter's testimony, does not conclusively demonstrate the frequency of her anxiety attacks, we do not now credit her statement that she has attacks twice a week. The ALJ could, however, inquire further into that matter on remand.

3. We do not disturb the ALJ's findings at step four to the extent that they establish that Trotter cannot perform her past relevant work.

entirely clear on the present record whether she was disabled at the time of her application. If, crediting Trotter and Dr. Karim as we have directed, the ALJ concludes that Trotter was disabled at the time of her application, she is eligible for benefits for the entire period; if not, she may be disabled for part of the disputed period.

**REVERSED and REMANDED.**