**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEWIS POTTER, | No. 12-35362 |
| Plaintiff - Appellant, | D.C. No. 6:10-cv-01527-SI |
| v. | MEMORANDUM[*] |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted March 3, 2014
Portland, Oregon

Before: TROTT and W. FLETCHER, Circuit Judges, and BLOCK, Senior District Judge.[**]

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Lewis Potter appeals a judgment affirming the denial of his application for disability insurance benefits. We assume familiarity with the facts of the case and the issues on appeal.

The administrative law judge ("ALJ") found that Potter suffered from a severe impairment: costochondritis (an inflammation of the cartilage between the ribs). He further found, however, that Potter was not disabled because he had the residual functional capacity ("RFC") to perform "light exertional work except [he] can lift and carry up to 10 pounds occasionally and frequently with the right upper extremity and up to 20 pounds occasionally and frequently with the left upper extremity," and could, with that RFC, perform jobs existing in significant numbers in the national economy.

In determining Potter's RFC, the ALJ credited the assessment of Dr. Joseph Jensen, who testified as a medical expert, over those of Dr. Heather Kahn, Potter's treating physician, Dr. Gregory Grunwald, a consultative examining physician, and Dr. Scott Pritchard, a consultative non-examining physician. His stated reason for doing so was that Dr. Jensen's opinion was "well supported by medically acceptable clinical and laboratory diagnostic techniques," while those of the other physicians were not.

To the extent that the ALJ discredited the opinions of Drs. Kahn, Grunwald, and Pritchard based on a lack of objective evidence of the severity of Potter's pain, this was error   *None* of the physicians' RFC assessments was supported by objective evidence because, as the Commissioner's own regulations recognize, pain is "subjective and difficult to quantify." 20 C.F.R. § 404.1529(c)(3).  In *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), we held that an ALJ cannot require objective evidence "for a disease that eludes such measurement." *Id.* at 594 (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003)).  Although the disease at issue in *Benecke* was fibromyalgia, the disabling symptom—pain—is the same.

Because the disabling effect of pain cannot be confirmed by objective medical evidence, Potter's RFC depends on his subjective complaints.  Evaluating subjective complaints of pain is a two-step process.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  At the second step, the ALJ must assess the credibility of the claimant's subjective complaints; appropriate considerations include

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "[If] there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen,* 80 F.3d at 1281).

It is undisputed that costochondritis can reasonably be expected to produce pain, and that Potter's testimony about his level of pain would, if believed, rule out any level of work. However, the ALJ reasoned that Potter's activities "including painting and attending a boy scout camp with full physician clearance . . . are inconsistent with a disabling level of pain." Potter's "painting" was, however, an *attempt* to paint that resulted in a trip to the emergency room. Regarding the boy scout camp, the ALJ offered no reason for disbelieving Potter's testimony that he did not hike and spent most of the trip resting in his tent.

The ALJ made repeated references to a nerve-block procedure that, according to Dr. Grunwald, would restore Potter to "100% mobility." Potter testified that Dr. Kahn had discussed the procedure with him, but that he was afraid that it might worsen his condition or prevent him from noticing a heart attack.

According to Potter, Dr. Kahn did not make a recommendation either for or against the procedure.

As noted, "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is an appropriate credibility consideration. *Smolen*, 80 F.3d at 1284. Since 2002, however, Potter has sought numerous treatments for his pain. Most did not work at all, and those that did—Vicodin and lidocaine patches—provided only some relief. Potter paid for at least a portion of the lidocaine patches out of his own pocket.

Nevertheless, we are troubled by Potter's unwillingness to pursue the one treatment that might completely alleviate his pain. Problematically, the ALJ did not clearly tie Potter's failure to pursue the nerve-block procedure to his credibility. We conclude that the appropriate course of action in the circumstances is to remand for a reassessment of Potter's credibility. On remand, the ALJ should explain the relationship between Potter's credibility and his refusal to pursue the nerve-block procedure. In that regard, the ALJ should develop the record regarding the nature of the procedure and its benefits and risks. He should also evaluate Potter's concerns about the procedure and give due consideration to the treatments Potter has sought.

The parties shall bear their own costs on appeal.

VACATED AND REMANDED.

5