WATFORD, Circuit Judge,
dissenting:
The ALJ’s decision in this case suffers from two major flaws: The ALJ failed to provide valid grounds for discounting Sam-uels’ credibility, and the ALJ did not properly weigh the opinions of the medical professionals who treated Samuels.
First, the ALJ failed to provide clear and convincing reasons for discrediting Samuels’ allegations about the intensity and effects of her symptoms. In concluding that Samuels’ activities of daily living were inconsistent with her subjective complaints, the ALJ found -it “[m]ost signifi-cante]” that Samuels has been “able to care for her young children at home ... without any particular assistance.” But the record does not show that Samuels has been able to care for her children, or perform other household tasks, without assistance. As in Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014), where we reversed the ALJ for making a similar error, Samuels emphasized that she had help, primarily from her teenage daughter, in performing routine daily activities, and that she was regularly unable to do laundry, prepare meals, or carry grocery bags by herself. See id. at 1015-16.
The ALJ also found Samuels’ subjective complaints inconsistent with the medical evidence, but the ALJ’s reasoning was erroneous on this score as well. The ALJ relied heavily on the apparent discrepancy between the relatively mild objective indicators of rheumatoid arthritis in the record *859 and Samuels’ complaints of severe pain. The record contains an obvious explanation for that discrepancy, which the ALJ failed to properly address. Samuels also suffers from fibromyalgia, a disease that eludes objective measurement. See Benecke v. Barnhart, 379 F.3d 587, 590-91, 594 (9th Cir. 2004). The ALJ discounted the possible effects of fibromyalgia on the ground that Samuels received “no specific treatment” for it. The ALJ was wrong: One of Samuels’ treating rheumatologists, Dr. Smith, assessed fibromyalgia to be “a major issue” and prescribed tramadol for pain in December 2009. (It’s unclear in any event why receiving treatment specifically for fibromyalgia—a rheumatic pain disorder, see id. at 589-90—would be relevant when, as here, the claimant suffers from rheumatoid arthritis and receives aggressive treatment for associated pain.) In evaluating Samuels’ credibility, the ALJ erred by refusing to account for the possible effects of fibromyalgia on the level of pain Samuels reported experiencing.
Second, the ALJ’s errors in assessing Samuels’ credibility also infected the ALJ’s consideration of the opinions of the medical professionals who treated Samuels. Dr. Soloman and Physician’s Assistant Lijoi, who both treated Samuels, concluded that Samuels’ condition precluded her from sustaining an ordinary eight-hour workday. Even though the ALJ needed to provide only “germane reasons” for discounting Li-joi’s opinion, see Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), the ALJ did not clear even that low bar. The ALJ rejected both opinions because they were inconsistent with the relatively benign objective indicators of rheumatoid arthritis, and because both Lijoi and Dr. Soloman based their diagnoses at least in part on Samuels’ subjective complaints. But fibro-myalgia “is diagnosed entirely on the basis of patients’ reports of pain and other symptoms,” Benecke, 379 F.3d at 590, so reliance on Samuels’ subjective complaints is not an appropriate reason to discount either opinion. Nor could the ALJ rely on the supposed inconsistency between the relatively mild objective test results and Samuels’ reported level of pain. Lack of corroboratory test results is a hallmark of the disease, which may cause immense pain nonetheless. See id. at 589-90, 594.
Because these errors are by no means harmless, I would reverse and remand for further proceedings.