**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KASSIE E. BENSON, | No. 20-17010 |
| *Plaintiff-Appellant*, | D.C. No. 4:19-cv-03447-JSW |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | MEMORANDUM* |
| *Defendant-Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted November 19, 2021
San Francisco, California

Before: W. FLETCHER and MILLER, Circuit Judges, and KORMAN,** District
Judge. Partial Concurrence and Partial Dissent by Judge MILLER.

Kassie Benson appeals from the district court's affirmance of the decision of

an administrative law judge ("ALJ") denying her application for disability insurance

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Edward R. Korman, United States District Judge for
the Eastern District of New York, sitting by designation.

benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. This case has a lengthy and complex procedural history. We presume familiarity of the record and procedural history and turn to the merits of the case.

The ALJ found that "[t]hrough the date last insured, [Benson] had the following severe impairments: depressive disorder; obsessive compulsive disorder (OCD); somatic symptom disorder; anxiety disorder; degenerative disc disease; [and] morbid obesity with lymphedema of the lower extremities."[1] To determine whether these impairments rendered Benson disabled, the Social Security Administration ("SSA") sought the assistance of, among others, examining psychiatrist Dr. Mathilde Weems and examining psychologist Dr. Paul Martin. On this appeal from the order of the district court affirming the denial of benefits by the ALJ, the parties focus largely on the ALJ's rejection in whole or part of these psychological assessments.

Dr. Weems evaluated Benson on October 30, 2012. Weems concluded that Benson had difficulties with complex tasks, maintaining focus, and tolerating stress. In a work environment, she would "likely" need instructions repeated and extra supervision and "would have difficulty maintaining attendance due to lack of

---

[1] "Somatic symptom disorder," to which the ALJ referred, "is diagnosed when a person has a significant focus on physical symptoms, such as pain . . . to a level that results in major distress and/or problems functioning." American Psychiatric Association, https://www.psychiatry.org/patients-families/somatic-symptom-disorder/what-is-somatic-symptom-disorder (last visited Feb. 10, 2022).

2

mobility and fatigue." Weems opined that Benson "has poor stress tolerance, is easily overwhelmed[,] and may have difficulty getting through a typical workday." She also observed that Benson "appeared to be morbidly obese. She was limping and walking slowly. . . . [H]er body appeared to be shaking at times."

The ALJ erred in not crediting Weems's opinion that Benson "would have difficulty maintaining attendance due to lack of mobility and fatigue," on the basis that it was "outside the purview of her expertise." Weems was an M.D. trained to assess obvious defects such as decreased mobility and fatigue. Moreover, the ALJ otherwise agreed with this opinion: "Claimant's weight, including the impact on her ability to walk as well as her other body systems, has been considered within the limitations of the claimant's residual functional capacity [("RFC")]." *Cf. Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (considering a physician competent to testify on psychiatric conditions when the conclusions are based on clinical observations).

The ALJ also erred by discounting Weems's opinion that Benson had impaired focus and memory. The ALJ found Weems's opinion inconsistent with Benson's mental status examination because it showed that Benson had the ability to remember three objects and spell the word "world." But Benson failed at performing serial sevens (counting backwards from 100 by sevens), and the ALJ may not "cherry-pick[]" the findings of physicians. *Ghanim v. Colvin*, 763 F.3d

3

1154, 1164 (9th Cir. 2014). Moreover, these tests do not appear to tell us much about the ability to complete a normal workday without interruption, and Social Security regulations acknowledge that the ability to complete tasks in settings that are "less demanding . . . than typical work settings does not necessarily demonstrate [an applicant's] ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. p. 404, subpt. P, app. 1, § 12.00(C)(6)(b).

The second examining psychologist, Dr. Martin, reported that Benson "endorsed symptoms of anxiety including excessive nervousness, ruminating thoughts, and constant worry." She "presented . . . in an anxious manner." Benson "also reported having [physical] symptoms commonly associated with anxiety" and "a history of panic attacks." Martin wrote that Benson "also endorsed numerous symptoms of depression." Moreover, Benson reported symptoms of OCD. Martin diagnosed Benson with major depressive disorder, generalized anxiety disorder with panic attacks, "[u]nspecified [s]omatic [s]ymptom and [r]elated [d]isorder," and "[o]verweight or [o]besity." In his medical source statement, Martin wrote that Benson was markedly limited in her ability to complete a normal workday or workweek without interruptions from her psychiatric condition and in her ability to deal with the usual stresses encountered in a competitive work environment.

In rejecting Martin's opinions, the ALJ relied on the fact that his examination

was completed four years after her last insured date. But the ALJ had ordered this examination after the district court remanded this case with directions that the agency "consider [Benson's] depression as part of [the] RFC assessment, and assess [Benson's] anxiety disorder and OCD." The agency determined that Martin's evaluation was necessary to assist the ALJ in complying with the remand, because it concluded that the record was not sufficiently developed. Under these circumstances, the rejection of the report on the ground that it was long after the date last insured was improper.

The ALJ also found that Martin's opinions of marked limitation "are inconsistent with his unremarkable mental status examination." But like Weems's examination, Dr. Martin's examination and opinions are not internally inconsistent. Again, Benson's ability to complete tasks such as identifying how an orange and banana are similar and naming the last five presidents do not indicate that she is able to function in a work environment. And while Benson "showed no significant difficulty with sustained attention and mental tracking" on the Trail Making Test, which measures "general brain function and assesses the presence of possible brain damage," she scored in the low average range on the WAIS-IV test measuring her "current intellectual abilities" and in the low average range for all four categories of memory on the WMS-IV flexible approach test. The four categories of memory are immediate memory, delayed memory, verbal memory, and visual memory.

Moreover, in rejecting Dr. Weems's opinion the ALJ alluded to the contrary opinions of non-examining psychologists Drs. Lisa Fitzpatrick and Timothy Schumacher. Nevertheless, the ALJ assigned their opinions only "limited weight." Indeed, he ultimately concluded that while their analysis of the record was "instructive," he was "convinced that [Benson] was more limited before her date last insured" than Fitzpatrick and Schumacher said. In any event, "the conclusion of a non-examining physician is entitled to less weight than the conclusion of an examining physician." *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Moreover, to the extent other non-examining physicians opined that Benson's physical disabilities were not disabling, none of them were psychologists or psychiatrists trained to assess the effect of her severe mental impairments on her ability to work. On the contrary, their assessments that she could do "light work" were based on the extent to which she could engage in certain physical activity. Indeed, the SSA regulations that define light work speak to the claimant's ability to lift, carry, and walk. 20 C.F.R. § 404.1567(b).

We reverse the judgment of the district court with instructions to remand to the ALJ for the calculation and award of benefits. Here, "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). This case has been pending for nine years, and two different ALJs have conducted hearings. As discussed, the

6

ALJ "failed to provide legally sufficient reasons for rejecting" the opinions of the examining psychiatrist and psychologist. *Id.* Finally, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand" at step three, *id.*, because the opinions show that she was "seriously limited" in her ability to function "independently, appropriately, effectively, and on a sustained basis" in at least two of the four categories of functioning: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage [her]self." 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(A)(2)(b), (F)(2)(d). Moreover, the ALJ would be required to find Benson unable to perform any work at step five based on the vocational expert testimony that someone who was off task for 20% or more of the time could not perform any work. The ALJ assumed that an individual who was markedly limited in their ability to complete a normal workday or workweek without interruptions would be off task 20% or more of the time.

**REVERSED AND REMANDED.**

7

*Benson v. Kijakazi*, No. 20-17010

MILLER, Circuit Judge, concurring in part and dissenting in part:

I agree that the decision of the administrative law judge was not supported by substantial evidence, but I would remand for further proceedings rather than order an award of benefits.

When a court sets aside a decision of an administrative agency, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (per curiam) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)). That principle applies to decisions of the Social Security Administration just as it does to decisions of other agencies. *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("The ordinary remand rule applies equally to Social Security cases."). Accordingly, we have held that a remand for an immediate award of benefits is appropriate only in "the *unusual* case in which it is clear from the record that the claimant is unable to perform gainful employment." *Id.* at 1106 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). We will direct an award of benefits only if "the record as a whole is free from conflicts, ambiguities, or gaps, . . . all factual issues have been resolved, and . . . the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1103–04.

1

Even if the testimony of Dr. Weems and Dr. Martin were credited as true, it is not clear from the record that Benson would be unable to perform gainful employment. It is the ALJ's role in the first instance to assess whether testimony shows that the claimant's impairments meet the listing criteria of the regulations at step three. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2); 20 C.F.R. § 416.926. In addition to his findings of impairment, Dr. Martin found that Benson was only "mildly limited" in performing detailed and complex tasks, "mildly limited" in ability to perform work activities without additional supervision, and "moderately limited" in ability to perform work activities on a consistent basis. He also found that she "showed no significant difficulty with sustained attention and mental tracking" on the trail-making test and that she scored in the "Low Average" range on both the WMS-IV memory test and WAIS-IV intelligence test. The ALJ must evaluate those treatment observations alongside all other medical evidence to determine whether they compel a finding that Benson's impairments met or equaled the listing criteria.

The same is true of the analysis at step five. Although the vocational expert testified that someone who was off-task 20 percent of the day would not be able to perform substantial gainful work, neither Dr. Weems nor Dr. Martin said that Benson would be off-task 20 percent of the day. To be sure, their testimony might be taken to imply that conclusion, but the matter is not free from doubt, and it is

2

the job of the ALJ, not this court, to translate clinical findings into a residual functional capacity. *Rounds v. Commissioner of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). I would remand to permit the ALJ to do so.