**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SANDRA LEE TIMPONE, | No.    18-55155 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-09620-SK |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | MEMORANDUM* |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Steve Kim, Magistrate Judge, Presiding

Submitted May 19, 2022**
San Francisco, California

Before:  D.W. NELSON, BERZON, and CHRISTEN, Circuit Judges.
Dissent by Judge CHRISTEN.

Sandra Lee Timpone appeals the district court's affirmance of the

Commissioner of Social Security's denial of her application for Disability

Insurance Benefits under Title II of the Social Security Act.  We have jurisdiction

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*       The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g). We review the district court's decision de novo and will set aside the agency's denial of benefits only if the decision was not supported by substantial evidence. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). We reverse.

1. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an Administrative Law Judge ("ALJ") "may only reject it by providing specific and legitimate reasons" supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ did not provide specific and legitimate reasons for discounting the opinions of Dr. Harris and Dr. Arkfeld and instead according the greatest weight to the opinion of Dr. Vu.

First, the ALJ stated that "there is no indication in the record that suggests the claimant has to keep her legs elevated given her normal echocardiogram and nuclear stress tests." But the ALJ did not explain why normal echocardiogram and nuclear stress tests contradicted Dr. Harris's opinion. The ALJ "must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Moreover, the record contradicts the ALJ's conclusion, as Timpone's treatment records are replete with evidence that she suffered edema and other forms of swelling in her feet and legs, which might

2

require elevation.

Second, the ALJ stated that Dr. Harris's and Dr. Arkfeld's opinions were "simply extreme in light of [Timpone's] normal neurological findings, full motor strength, normal gait, and lack of muscle atrophy." That reasoning reflects a "fundamental misunderstanding of fibromyalgia." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). In Social Security disability cases involving fibromyalgia, "the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Id.* at 662. "Fibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis.'" *Id.* at 663 (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004)). A person with fibromyalgia, such as Timpone, "may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Id.* (alteration in original) (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting)). Just stating, as the ALJ did, that a physician's limitations are "far beyond what is supported by objective testing" is not a specific and legitimate reason to discount a treating physician's opinion in a case involving fibromyalgia. *Id.* at 665 (internal quotation marks omitted). The ALJ's "[s]heer disbelief is no substitute for substantial evidence." *Benecke*, 379 F.3d at 594.

Moreover, the ALJ failed to consider multiple factors relevant under 20 C.F.R. § 404.1527(c) when weighing the physicians' opinions. *See Trevizo*, 871 F.3d at 676. The ALJ made no reference to the intensive, long-term treating relationship Dr. Harris and Dr. Arkfeld had with Timpone. The ALJ also failed to consider that Dr. Harris, an orthopedist, and Dr. Arkfeld, a rheumatologist, are specialists with particular expertise in Timpone's claimed impairments. *See* 20 C.F.R. § 404.1527(c)(5). A "rheumatologist's specialized knowledge is 'particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community.'" *Revels*, 874 F.3d at 664 (quoting *Benecke*, 379 F.3d at 594 n.4).

2. The ALJ also failed to provide germane reasons to discount Timpone's husband's testimony. The ALJ stated that Timpone's husband, Ed Timpone, "is not medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms," making the accuracy of his report "questionable." But "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Dismissing lay testimony because the witness is not medically trained is inconsistent with this established principle, as

4

lay witnesses by definition lack medical expertise but are competent to testify as to the claimant's symptoms and daily functioning.

The ALJ also stated that "by virtue of the relationship as the husband of the claimant," Ed Timpone could not "be considered a disinterested third party." The "fact that a lay witness is a family member," however, "cannot be a ground for rejecting his or her testimony," and, in fact, lay witness testimony from those "who see the claimant every day"—such as a spouse—"is of particular value." *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996) (citation omitted). Last, the ALJ accorded little weight to Ed Timpone's testimony on the ground that it was "simply not consistent with the preponderance of the medical evidence." This conclusion is based on the ALJ's fundamental misunderstanding of Timpone's fibromyalgia, and in any event, the "fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing." *Diedrich*, 874 F.3d at 640.

3. The ALJ also discounted Timpone's own testimony regarding her symptoms and limitations. For reasons discussed already, the ALJ erred insofar as she rejected Timpone's testimony based on its purported inconsistency with the objective medical evidence. The ALJ's adverse credibility determination may be supported by substantial evidence in light of Timpone's testimony regarding her vomiting symptoms, but the opinions of Timpone's treating physicians, if afforded

5

the appropriate weight, could bolster Timpone's credibility, especially because the single contradiction that supports the ALJ's credibility determination is immaterial to the fibromyalgia diagnosis and the opinions of Timpone's treating physicians.

We therefore reverse and remand to the district court with instructions to remand to the agency for further proceedings. On remand, the ALJ must reconsider the medical opinions and lay witness statement in accordance with this disposition and reevaluate the credibility and weight of Timpone's testimony in light of that evidence.

**REVERSED AND REMANDED.**

*Timpone v. Kijakazi*, No. 18-55155

**CHRISTEN, Circuit Judge, dissenting:**

In my view, substantial evidence supports the ALJ's finding that Timpone lacked credibility because the record does not support Timpone's unequivocal testimony that she vomited from her medication daily. Timpone's credibility is critical because whether fibromyalgia interferes with her ability to engage in gainful employment largely boils down to her testimony and the other evidence establishing the intensity of her symptoms. *See Revels v. Berryhill*, 874 F.3d 648, 663 (9th Cir. 2017) (holding that "[f]ibromyalgia is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory tests to confirm the diagnosis'" (quoting *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004))). Although the evidence in this case is susceptible to more than one rational interpretation, under the substantial evidence standard of review, we "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Because I would affirm the ALJ's decision, I respectfully dissent.