**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEXANDRA D. PETERSON, | No. 25-528 |
| Plaintiff - Appellant, | |
| v. | D.C. No. 1:24-cv-03106-TOR |
| FRANK BISIGNANO, Commissioner of Social Security, | MEMORANDUM* |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of Washington
Thomas O. Rice, District Judge, Presiding

Argued and Submitted November 19, 2025
Seattle, Washington

Before: McKEOWN, W. FLETCHER, and DESAI, Circuit Judges.

Alexandra Peterson ("Peterson") appeals the district court's order affirming

an Administrative Law Judge's ("ALJ") denial of her application for Social

Security disability insurance benefits.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and review the district

court's order affirming the denial of benefits de novo. *Kitchen v. Kijakazi*, 82

F.4th 732, 735, 738 (9th Cir. 2023). We "will disturb the denial of benefits only if

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

the decision contains legal error or is not supported by substantial evidence." *Id.* at 738 (internal quotations omitted). We hold that the ALJ erred by (1) improperly evaluating the medical opinion evidence and (2) improperly discounting Peterson's subjective testimony about her symptom severity. We therefore reverse and remand for further proceedings consistent with this disposition.

1. Medical Opinion Evidence

The ALJ erred when discounting the medical opinions of Doctor of Chiropractic ("DC") Briggs and Advanced Registered Nurse Practitioner ("ARNP") Hardison. The operative Social Security Regulations ("SSR") do not consider chiropractors or ARNPs "acceptable medical source[s]," so ALJs may discount their opinions by providing "reasons germane to each witness." 20 C.F.R. § 416.902(a); *Britton v. Colvin*, 787 F.3d 1011, 1013 (9th Cir. 2015) (internal quotations omitted). However, when "evaluating whether a claimant's [RFC] renders them disabled because of fibromyalgia," ALJs must construe the medical evidence "in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Although the ALJ recognized that Peterson's severe impairments include fibromyalgia, he failed to construe Briggs' and Hardison's opinions in light of fibromyalgia's unique characteristics.

25-528

Briggs estimated that Peterson's symptoms would cause her to miss three days of work per month. Hardison concluded that Peterson would miss four or more days of work per month. The ALJ gave these opinions "little weight" because they were inconsistent with evidence indicating that Peterson had "no degenerative changes; no soft tissue abnormalities; no fractures or dislocations; normal deep tendon reflexes; strong and equal bilateral muscle strength . . . normal sensation to touch, pin and vibration," and "normal gait." This conclusion reflects a "fundamental misunderstanding of fibromyalgia." *Id.* at 662.

Fibromyalgia patients experience chronic pain, but their reflexes, muscle strength, joints, and musculoskeletal exams appear normal. *See id.* at 656. Fibromyalgia is instead diagnosed "entirely on the basis of patients' reports of pain and other symptoms." *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004). Thus, the ALJ erred by "effectively requir[ing] objective evidence for a disease that eludes such measurement." *Id.* at 594 (internal quotations omitted).

The ALJ also erred by discounting Briggs' and Hardison's opinions without addressing the length of their treatment history. When determining how much weight to afford a medical opinion, ALJs are "required to consider" the "[l]ength of the treatment relationship and the frequency of examination" and the "[n]ature and extent of the treatment relationship." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(2). These considerations are especially

3                                                      25-528

important when evaluating fibromyalgia patients because their symptoms "can wax and wane." SSR 12-2p, at *6. For this reason, the SSR directs ALJs assessing fibromyalgia patients to "consider a longitudinal record whenever possible." *Id.*

From 2016 to 2018, Briggs treated Peterson approximately seventy-five times. Yet, the ALJ found Briggs' opinion "not persuasive" because it was "inconsistent" with the findings of Dr. Drenguis, a non-treating physician who evaluated Peterson once.

Hardison treated Peterson between 2014 and 2018, during which time she specifically addressed Peterson's chronic pain and fibromyalgia. The ALJ discounted her opinion because it conflicted with ARNP Sigler's opinion. However, ARNP Sigler saw Peterson only three times, two of which were ten-minute video appointments, and none of which addressed her fibromyalgia.

In discounting Briggs' and Hardison's opinions, the ALJ failed to acknowledge that they had longer, more frequent, and more extensive treatment relationships with Peterson than Dr. Drenguis or ARNP Sigler. The ALJ's failure to address these factors "alone constitutes reversible legal error." *Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017); *see also* 20 C.F.R. § 404.1527(f)(1) ("[I]t may be appropriate to give more weight to the opinion of a medical source who is not an acceptable medical source if he or she has seen the individual more often . . . .").

25-528

## 2. Symptom Severity Testimony

The ALJ also erred in discounting Peterson's testimony about her physical and mental health symptoms. An ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (internal quotations omitted). This "clear and convincing standard is the most demanding required in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002).

The ALJ discounted Peterson's testimony about her physical symptoms because (1) it conflicted with "objective findings" suggesting that she had normal muscle tone, normal gait, good range of motion, etc., and (2) her reports of pain were supposedly inconsistent. On the first point, the ALJ once again erred by requiring objective evidence of Peterson's fibromyalgia. *Benecke*, 379 F.3d at 594. On the second point, the ALJ erred by mischaracterizing the record. Although hundreds of medical records addressed Peterson's pain symptoms, the ALJ held that her reports of pain were inconsistent. However, the few appointments the ALJ identified in which Peterson did not discuss her pain focused on COVID-19 symptoms and contraception. It is reasonable that a patient visiting a provider for COVID-19 or birth control would not discuss her unrelated chronic-pain symptoms. Because the ALJ's conclusion rested on a misunderstanding of

fibromyalgia and misstatement of the record, we hold that he did not provide "clear and convincing reasons" for discounting Peterson's physical symptom testimony. *Garrison*, 759 F.3d at 1015.

The ALJ also erred by discounting Peterson's mental health testimony on the grounds that she was "resistan[t] to taking medication for her mental health issues." Throughout her treatment history, Peterson took several different medications to manage her mental health symptoms. The record shows that she discontinued these prescriptions because they were ineffective, poorly tolerated, or prohibitively expensive. In 2019, a treating physician agreed that psychotropic medication was "unlikely to be helpful." Thus, the record does not support the conclusion that Peterson was "resistan[t] to taking medication" to the degree that she was "treatment resistant."

For the above reasons, we **REVERSE** the decision of the district court with directions to **REMAND** this case to the Social Security Commissioner for further proceedings consistent with this disposition.